UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> GEVORK KARTASHYAN, ) <br> ) <br> Defendant. ) | CR 08-532(A) SVW <br><br> ORDER DENYING DEFENDANT'S <br> MOTION TO DISMISS FOR <br> PROSECUTORIAL MISCONDUCT [102] |

**I. INTRODUCTION**

Defendant Gevork Kartashyan ("Defendant") seeks to dismiss the First Superseding Indictment due to alleged prosecutorial misconduct before the grand jury. Specifically, Defendant takes issue with the following statements made by AUSA Baum and/or FBI Agent Jennifer Doss before the grand jury:

1     (1)  In response to a question from a grand juror, AUSA Baum said:

    Let's be clear.  I mean we probably should explain, briefly explain, what the Medicare standards are.  The kind of wheelchairs that are being supplied, these are the kind of wheelchairs you have when you have a life event that completely disables you; so it's the kind of wheelchair that Christopher Reeve would be rolling around in.

Defendant argues that this statement by AUSA Baum did not accurately represent the applicable Medicare requirements for qualification for one of these wheelchairs.  Indeed, the applicable regulation does not say that an individual has to be "completely disabled" or paralyzed like Christopher Reeve.  The regulation states that a patient must have a "mobility limitation that significantly impairs his/her ability to participate in one or more mobility-related activities of daily living such as toileting, feeding, dressing, grooming, and bathing in customary locations in the home."  (TR, Ex. 19, at 38.)

    (2)  The following statement was made by FBI Agent Doss:

    Part of Medicare rules and regulations – this may be getting way too technical, but there's something called Local Coverage Determinations.  And these are the rules to live by if you're a durable medical equipment supplier. . . .  First, they have to determine whether they have upper mobility limitation. . . .

2

> Before you can supply this kind of wheelchair, you have to make sure the person you're supplying has these kinds of limitations.

Defendant argues that this statement makes it appear that Defendant had a legal obligation to make an independent evaluation as to whether the beneficiary had upper body mobility limitations before delivering the wheelchair to the beneficiary.

(3)   FBI Agent Doss also made the following statement before the grand jury:

> [Defendant is] required to know the Medicare standards for going out and doing these deliveries and making sure the people receiving the wheelchairs understand the standards and making sure that he does a home assessment, being that he takes those steps and those actions and knowing that, when he goes out to deliver a wheelchair, that he's not doing all of the requirements that are required by Medicare when he makes those deliveries.  So he's taking those steps, which means he's working towards the fraud.

Defendant argues that this testimony was misleading because it gave the impression that Defendant had a legal obligation to read the Medicare standards to the recipients.

///

///

///

**II.   ANALYSIS**

The conduct of AUSA Baum and FBI Agent Doss before the grand jury does not call for dismissal of the indictment.  Federal courts draw their power to dismiss an indictment from two sources.  First, the court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding.  United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant."  United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989).  Constitutional error may also be found "if the defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."  Id. at 1358.

Second, a district court may dismiss an indictment under its supervisory powers.  The supervisory powers doctrine "is premised on the inherent ability of federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice."  Id.  Before a court may invoke it supervisory powers, it must first find that the defendant was actually prejudiced by the misconduct.  Id.  "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial

influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250 (1988); see also Larrazolo, 869 F.2d at 1358 (quoting Nova Scotia); United States v. Spillone, 879 F.2d 514 (9th Cir. 1989); Isgro, 974 F.2d at 1094.

The conduct before the grand jury here did not substantially influence the grand jury's decision to indict; nor is there "grave doubt" that the grand jury's decision was free from substantial influence of such violations. First, AUSA Baum's "Christopher Reeve" comment was not sufficiently inaccurate to warrant dismissal of the indictment. In Larrazolo, the Ninth Circuit found that dismissal was not justified when the prosecutor misstated the elements of the offense before the grand jury. 869 F.2d at 1359. In the course of explaining the elements of criminal conspiracy, the prosecutor failed to include the elements of criminal intent and knowledge when explaining the law. Id. The Ninth Circuit said that the "prosecutor has no duty to outline all the elements of conspiracy so long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied." Id. The court said that "'[e]rroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment.'" Id. (quoting Wright, 667 F.2d at 796). Instead, the defendant "must show the conduct of the prosecutor was 'so flagrant' it deceived the grand jury in a significant way infringing on their ability to exercise independent judgment." Id.

Defendant has not shown that the conduct at issue here was "so flagrant" that it infringed the grand jury's ability to exercise independent judgment. First, AUSA Baum did not necessarily say that a person would have to have the same disability as Christopher Reeve

1  (completely paralyzed) before the person could receive the chair.
2  Rather, AUSA Baum said that this wheelchair was "the kind of wheelchair
3  that Christopher Reeve would be rolling around in."  Thus, it is not
4  entirely clear whether AUSA Baum incorrectly stated the qualification
5  requirement for the power wheelchair.  Furthermore, unlike Larrazolo,
6  where the prosecutor completely left out the mens rea element of the
7  criminal offense, here, the legal standard at issue was not part of the
8  substantive offense.  AUSA was simply explaining to the grand jurors
9  what kind of people would be qualified to receive this type of
10 wheelchair.  Although this could be relevant to determining whether
11 there was fraud, it did not go to the heart of the offense like the
12 instruction did in Larrazolo.
13     With regard to Defendant's two other arguments, neither of these
14 are sufficiently serious to have substantially influenced the grand
15 jury's decision to indict.  First, it is unclear whether either
16 statement by FBI Agent Doss actually misrepresented the applicable
17 Medicare standards in the first place.  Agent Doss said that the
18 deliveryman has to determine whether the beneficiary has an upper body
19 mobility limitation, but she did not expressly state that the
20 deliveryman has to perform an independent physical examination.
21 Rather, this statement could be interpreted as simply stating that the
22 deliveryman has to make sure that the beneficiary has the correct
23 doctor's authorization.
24     The applicable regulation is actually somewhat unclear on this
25 point.  The regulation states that in order for a power wheelchair to
26 be covered, the beneficiary must not have "sufficient upper extremity
27 function to self-propel an optimally-configured manual wheelchair in
28

6

the home to perform MRADLs during a typical day." (TR, Ex. 19, at 36.) Whether the deliveryman has a duty to make this determination himself, or whether the deliveryman can rely on a doctor's diagnosis in this regard, is unclear. Thus, in light of this ambiguity, the Court finds that Agent Doss's testimony did not have an improper influence on the grand jury's decision to indict.

With regard to the final comment, that Defendant had a duty to make sure that the people receiving the wheelchairs understood the standards, the Court finds that this comment does not warrant dismissal of the indictment. In fact, it appears that Defendant actually did certify in forms found in CCH's supply files that he read the Medicare requirements to each recipient. Thus, Agent Doss's statement does not appear to be inaccurate, and this evidence could have been properly considered by the grand jury in determining whether to indict Defendant.

Even if these comments could be interpreted as inaccurate or misleading, however, they are not sufficiently serious to establish that the comments substantially influenced the grand jury's decision to indict, or show that there is "grave doubt" that the decision to indict was free from the substantial influence of such comments. Agent Doss further testified about other evidence in the case, and although the evidence was not overwhelming, there was enough evidence to show probable cause for the indictment.

///

///

///

7

**III. CONCLUSION**

Thus, Defendant's Motion to Dismiss the Indictment for Prosecutorial Misconduct is DENIED.

IT IS SO ORDERED.

DATED: July 23, 2009

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE